UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cr-158-MOC

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| MARIO EDWARD ROANE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 23). The Government has responded in opposition to the motion. (Doc. No. 26). For the following reasons, Defendant's motion will be **DENIED**.

I.   BACKGROUND

**A. Criminal Conduct**

Defendant committed two separate bank robberies. First, on March 18, 2020, Defendant robbed the First-Citizens Bank and Trust Company branch at 128 South Tryon Street, Charlotte, North Carolina. See (Doc. No. 16 at 4). He entered the bank, approached a bank teller, and stated, "This is a robbery. Give me all your 50s and 100s. I have a gun. Do you want to see it?" (Id.). The teller gave Defendant $1,700 from her cash drawer. (Id.). As the teller handed Defendant the money, he told her not to press any alarm buttons. (Id.). Defendant then fled the bank. (Id.).

Second, on March 23, 2020, Defendant robbed the Wells Fargo Bank, N.A., branch at 301 South Tryon Street, Charlotte, North Carolina. (Id.). He entered the bank and waited in line until summoned by a teller. (Id.). Once he arrived at the teller, Defendant handed her a withdrawal slip with the following written on it: "This is a stick up. Give." (Id.). As Defendant

1

handed the note to teller, he stated: "This is a stick up. Give me everything you have." (Id.). The teller was confused by Defendant's statements, so her co-worker, another teller, asked him to repeat what he said. (Id.). Defendant then stated: "Give me all your money, or I'll blow your head off." (Id.). Defendant also gestured to his pocket, stating: "I have a gun in here. Don't make me use it." (Id.). The second teller pressed the bank's silent alarm. (Id.). A bank manager told the first teller to give money to Defendant, so she emptied her cash drawer, giving Defendant $4,650. (Id.). Defendant placed the money in his pants and fled the bank. (Id.).

As a result of his criminal conduct, Defendant pleaded guilty straight-up to the Bill of Indictment, which charged him with two counts of bank robbery in violation of 18 U.S.C. § 2113(a). See (Doc. No. 1). The Court ultimately sentenced him to 151 months in prison. (Doc. 21).

Defendant's conduct in this case was not an aberration. Defendant was convicted of attempted common law robbery on November 28, 2001, for attempting to steal money from a victim by means of an assault. See (Doc. No. 16 at 9). Then, on May 1, 2009, this Court sentenced him to 59 months' imprisonment for committing a bank robbery in Charlotte. (Id. at 10). While on federal supervised release for that bank robbery, Defendant committed another bank robbery in Charlotte. See (Id. at 10–11). This Court sentenced him to 42 months' imprisonment on his second bank robbery case, to be followed by 12 consecutive months for violating supervised release from his first bank robbery case. (Id.).

On November 27, 2017, Defendant began supervised release after serving his prison sentence for his second bank robbery case. (Id. at 11). This Court revoked his supervised release three times, sentencing Defendant to five months and eleven months in prison, respectively, for the first two revocations. See (Docs. 33 and 41 in Case No. 3:14-cr-16-MOC (W.D.N.C.)). The

third revocation stemmed from the bank robberies that are the subject of the instant case while on supervised release from his second federal bank robbery case. See (Doc. No. 16 at 11; Doc. No. 53 in Case No. 3:14-cr-16-MOC (W.D.N.C.)). Indeed, Defendant has spent every single day since his first federal bank robbery sentencing on May 1, 2009, either in federal prison or on federal supervised release for bank robbery. Based on his history of committing bank robberies, Defendant qualified as a career offender under the U.S. Sentencing Guidelines ("U.S.S.G.") in this case, and the Court sentenced him as a career offender to 151 months in prison on May 11, 2021. (Doc. No. 16 at 6; Doc. No. 21).

Defendant is 57 years old. See (Ex. A (BOP Profile) at 1). He is currently serving his sentence at Federal Correctional Institution Williamsburg ("FCI Williamsburg") in Salters, South Carolina, with an anticipated release date of April 28, 2031 (with good conduct time credit). (Id. at 1, 2). He has served less than a quarter of his sentence, assuming that he obtains maximum credit for good time served. (Id. at 4). During his current federal prison term, BOP sanctioned him for being in a unit that was not his own on May 1, 2022. (Ex. B (BOP Disciplinary Record) at 1). During his prior federal prison terms, BOP has sanctioned him for refusing to obey BOP staff, disruptive conduct, abusing phone privileges, being in an unauthorized area, possessing a prohibited item, and stealing food. (Id. at 1–3).

### B. Request for Compassionate Release

In his motion, Defendant states that he suffers from deteriorating mental and physical ailments that substantially diminish his ability to care for himself within the prison environment. (Id. at 1). He states that he has been diagnosed with paranoid schizophrenia, for which he has been taking a variety of medications while in prison, and from which he is not expected to recover. (Id. at 1–2). As for physical ailments, Defendant states that he suffers from type II

3

diabetes, extrapyramidal and movement disorder, and Tardive dyskinesia. (Id.). He states that these mental and physical conditions increase his risk of severe illness from COVID-19, thus constituting an extraordinary and compelling reason justifying his release from prison. (Id. at 2–3). He also claims that FCI Williamsburg suffers from a shortage of medical and correctional staff, resulting in his receiving inadequate healthcare, which also constitutes an extraordinary and compelling reason justifying his release from prison. (Id.). Additionally, Defendant argues that his age reduces his risk of recidivism. (Id. at 4–5). He also states that he has a viable release plan. (Id. at 5–6).

Defendant submitted a compassionate release request to his warden on August 9, 2022. (Id. at 17). The warden denied his request on September 22, 2022. (Id. at 18).

**C. Medical Records**

Based on a review of Defendant's medical records, his medical conditions include: (i) diabetes; (ii) hyperlipidemia; (iii) astigmatism, myopia, presbyopia, and glaucoma; (iv) benign hypertrophy of the prostate; (v) a variety of dental issues; (vi) depressive disorder; (vii) schizophrenia; and (viii) antisocial personality disorder. See (Ex. C (BOP Medical Records) at 2–4, 12, 22–23). Defendant takes a statin for his hyperlipidemia. (Id. at 22). Medical records from an evaluation by the FCI Williamsburg Chronic Care Clinic on August 18, 2022, note that Defendant undertakes a diet and exercise regimen for his diabetes and that he uses eye drops to treat his glaucoma. (Id. at 3). The medical provider noted that Defendant was "doing pretty well clinically" and that he was compliant with his diet and exercise regimen. (Id.). The medical provider also noted that Defendant's "[m]ood is good" and that Defendant reported taking no psychotropic medications. (Id.).

Defendant's medical records note optometry visits on September 28, 2022, April 4, 2022,

and October 21, 2021, resulting in renewed medication and noting that Defendant was happy with the treatment. (Id. at 1, 7–13). The medical records characterize his astigmatism, myopia, presbyopia, and glaucoma as being "resolved" as of September 28, 2022. (Id. at 24).

Defendant did not show up for dental exams scheduled for December 10, 2021, and December 14, 2021. (Id. at 40–41). Similarly, the medical records that Defendant attached to his motion (which go back in time further than those that the BOP provided the undersigned) note that Defendant "adamantly refuse[d] all meds offered" in connection with his mental health issues on July 21, 2021. (Doc. No. 24 at 15). They also note that on July 1, 2021, Defendant refused his medication and "refuse[d] to even get out of bed to talk to medical staff." (Id. at 21).

Defendant's medical records note that his schizophrenia and depressive disorder were in remission as of August 18, 2022. (Id. at 23). A mental health evaluation from March 11, 2022, noted that Defendant's "behavior is indicative more of poor social skills than psychotic disorder" and that "[h]e exhibits no functional impairment associated with mental illness." See (Doc. No. 24 at 38). Regarding Defendant's diagnoses of antisocial personality disorder and depressive disorder, the mental health professional concluded that "[f]or the most part, the continuation of these diagnoses are not supported by Mr. Roane's documented mental health history." (Id.). As for his schizophrenia diagnosis, the mental health professional explained that "based on the inmate's presentation and functioning over the past eight months without any antipsychotic medication, he no longer exhibits these symptoms or meets the criteria for the disorder." (Id. at 39). The mental health professional therefore classified Defendant's schizophrenia as in remission. (Id.).

Defendant received the first two shots of the Moderna COVID-19 vaccine on November 18, 2021, and December 15, 2021, and he received the Pfizer COVID-19 vaccine booster on

May 20, 2022. See (Ex. C (BOP Medical Records) at 33, 53, 56–57). Thus, he has been fully vaccinated.

## II. DISCUSSION

Once a defendant properly exhausts his administrative remedies, this Court may reduce Defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. That policy statement, however, was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, the Court is "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). The Court still may consider the § 1B1.13 factors, however, because that Section "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. As the movant, Defendant still bears the burden of establishing that he is eligible for a sentence reduction, and that includes establishing that "extraordinary and

compelling reasons" justify his request. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

Defendant has not established an extraordinary and compelling reason for compassionate release. Based on his medical records, Defendant's medical conditions include: (i) diabetes; (ii) hyperlipidemia; (iii) astigmatism, myopia, presbyopia, and glaucoma; (iv) benign hypertrophy of the prostate; (v) a variety of dental issues; (vi) depressive disorder; (vii) schizophrenia; and (viii) antisocial personality disorder. See (Ex. C (BOP Medical Records) at 2-4, 12, 22–23). Of Defendant's medical conditions, only diabetes and the mental health disorders are on the CDC's list of risk factors. See (Centers for Disease Control and Prevention, People With Certain Medical Conditions, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html). These conditions do not constitute an extraordinary and compelling reason justifying release because Defendant has been fully vaccinated. See, e.g., United States v. Adkins, 854 F. App'x 758, 759–60 (7th Cir. Aug. 5, 2021) (upholding district court's denial of defendant's compassionate release motion on the basis that the defendant had been fully vaccinated against COVID-19); United States v. Burks, No. 3:14-CR-208-MOC-1, 2021 WL 1394857, at *4 (W.D.N.C. Apr. 13, 2021) (denying defendant's compassionate release motion, explaining that "the prevailing scientific view is that vaccination makes extremely rare, and possibly eliminates entirely, the risk of severe disease from the virus" and that "[g]iven that Defendant has now been fully vaccinated, he simply does not show that he suffers from an extraordinary condition that is terminal or severely limits his ability to function in a correctional setting"); United States v. Williams, No. 5:01-CR-00012-KDB, 2021 WL 966028, at *3 (W.D.N.C. Mar. 15, 2021) (denying defendant's compassionate release motion, noting that the defendant had received the first dose of the Pfizer-BioNTech vaccine and would

soon be fully vaccinated, and explaining that "[b]eing vaccinated against COVID-19 seriously undermines Defendant's assertion that 'extraordinary and compelling reasons' warrant his release from prison"); United States v. Wakefield, No. 1:19-CR-00095-MR-WCM, 2021 WL 640690, at *3 (W.D.N.C. Feb. 18, 2021) (denying defendant's compassionate release motion where the defendant had received the first dose of the COVID-19 vaccine, explaining that "[b]ecause he has already contracted the virus and recovered without complication, and because he is in the process of being vaccinated, the Defendant cannot meet his burden of establishing that his COVID-19 risk is an extraordinary and compelling reason for his release").

In support of this motion, Defendant also asserts that there is a shortage of medical and correctional staff at FCI Williamsburg. See (Doc. 23 at 1). He fails to provide any factual support for this assertion. Moreover, Defendant's medical records undermine his claim that FCI Williamsburg is not adequately treating his medical conditions. For example, Defendant takes a statin for his hyperlipidemia. See (Ex. C (BOP Medical Records) at 22). Additionally, medical records from an evaluation by the FCI Williamsburg Chronic Care Clinic on August 18, 2022, note that Defendant undertakes a diet and exercise regimen for his diabetes and that he uses eye drops to treat his glaucoma. (Id. at 3). The medical provider noted that Defendant was "doing pretty well clinically" and that he was compliant with his diet and exercise regimen. (Id.). The medical provider also noted that Defendant's "[m]ood is good" and that Defendant reported taking no psychotropic medications. (Id.).

As for Defendant's vision issues, his medical records note optometry visits on September 28, 2022, April 4, 2022, and October 21, 2021, resulting in renewed medication and noting that Defendant was happy with the treatment. See (Id. at 1, 7–13). The medical records characterize his astigmatism, myopia, presbyopia, and glaucoma as being "resolved" as of September 28,

2022. (Id. at 24).

As for the mental health issues that Defendant identified in his motion, they too appear to have been resolved. Defendant's medical records note that his schizophrenia and depressive disorder were in remission as of August 18, 2022. See (Id. at 23). A mental health evaluation from March 11, 2022, noted that Defendant's "behavior is indicative more of poor social skills than psychotic disorder" and that "[h]e exhibits no functional impairment associated with mental illness." See (Doc. No. 24 at 38). Regarding Defendant's diagnoses of antisocial personality disorder and depressive disorder, the mental health professional concluded that "[f]or the most part, the continuation of these diagnoses are not supported by Mr. Roane's documented mental health history." (Id.). As for his schizophrenia diagnosis, the mental health professional explained that "based on the inmate's presentation and functioning over the past eight months without any antipsychotic medication, he no longer exhibits these symptoms or meets the criteria for the disorder." (Id. at 39). The mental health professional therefore classified Defendant's schizophrenia as in remission. (Id.).

Defendant's own failure to take advantage of the medical care offered at FCI Williamsburg also undermines his claim that a medical staff shortage constitutes an extraordinary and compelling reason justifying his release. For example, Defendant did not show up for dental exams scheduled for December 10, 2021, and December 14, 2021. See (Id. at 40–41). Similarly, Defendant's medical records note that Defendant "adamantly refuse[d] all meds offered" in connection with his mental health issues on July 21, 2021. See (Doc. No. 24 at 15). They also note that on July 1, 2021, Defendant refused his medication and "refuse[d] to even get out of bed to talk to medical staff." See (Id. at 21).

Finally, even if defendant's motion did demonstrate a medical staff shortage that

9

materially impacted his medical care—which it does not—it is not clear that a motion for compassionate release is the correct legal avenue for addressing such a claim. See, e.g., United States v. Miller, No. 15-cr-471, 2021 WL 2711728, at *3 (N.D. Cal. July 1, 2021) (Breyer, J.) (the guideline "refers to medical conditions that, by their nature, cannot be treated effectively in prisons. It does not encompass medical conditions that are treatable in prison, even when treatment appears to be inadequate. . . . Mr. Miller has alternative avenues to obtain improved medical care. Prisoners routinely bring constitutional claims based on inadequate medical care. . . . Mr. Miller's argument that inadequate medical care makes him eligible for compassionate release under § 3582(c)(1)(A) . . . suggests that Congress intended that statute to serve as an end-run around this established framework. Not so."); United States v. Williams, No. 2:18-cr-132, 2021 WL 2400860, at *4 (W.D. Wash. June 11, 2021) (Jones, J.) ("if inadequate medical care is an issue, Mr. Williams can pursue available administrative means to address his issues.").

In addition to finding that Defendant has not shown extraordinary and compelling reasons for his early release, the Court further finds that the factors set forth in 18 U.S.C. § 3553(a) counsel against release. Defendant would pose a danger to public safety and an extremely high risk of recidivism if released. Defendant committed two bank robberies in which he threatened to harm the victim bank employees. See (Doc. No. 16 at 4). Moreover, Defendant's criminal history demonstrates that this violent conduct was not an aberration and severely undermines his assertion that he presents less risk of recidivism because of his age. He committed the bank robberies that are the subject of this case approximately six months after his release from prison for his prior federal bank robbery case from this district, while on supervised release. And he committed his second bank robbery case while on federal supervised release for his first bank robbery case. See (Id. at 9–11). In short, Defendant is a serial bank robber. He is a "career

offender" both under the U.S.S.G. and in the colloquial sense of the term. Indeed, based on this record, Defendant would have qualified for a mandatory life sentence under the federal "Three Strikes" law at 18 U.S.C. § 3559(c) had the Government elected to seek that sentencing enhancement.

Given Defendant's substantial record of violent recidivism, committed even while under this Court's supervision, releasing him in this case before he has served even a quarter of his sentence would undermine the statutory purposes of sentencing under 18 U.S.C. § 3553(a), particularly the need for Defendant's sentence to reflect the seriousness of his offense, to take into account his history and characteristics, to promote respect for the law, to provide deterrence, and to protect the public from Defendant. Accordingly, the Court will deny Defendant's motion because the 18 U.S.C. § 3553(a) factors weigh heavily against granting him relief.

For all these reasons, the Court will deny Defendant's motion.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 23), is **DENIED**.

Signed: November 4, 2022

Max O. Cogburn Jr
United States District Judge